UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KIMBERLY D., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 2:24-cv-01958-GJL <br><br> SOCIAL SECURITY DISABILITY APPEAL ORDER |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 3. This matter has been fully briefed. *See* Dkts. 7, 11, 12.

After considering the administrative record (AR) and all memoranda, the Court concludes the Administrative Law Judge (ALJ) did not err in finding Plaintiff not disabled. The Court accordingly **AFFIRMS** the Commissioner's final decision in this matter.

I.      PROCEDURAL HISTORY

Plaintiff's application for Disability Insurance Benefits (DIB) was denied initially and following reconsideration. AR 60–105. Plaintiff's requested hearing was held before the ALJ on

SOCIAL SECURITY DISABILITY APPEAL ORDER - 1

September 12, 2023. AR 35–59. On December 26, 2023, the ALJ issued a written decision concluding Plaintiff was not disabled. AR 14–34. On October 1, 2024, the Appeals Council declined Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision subject to judicial review. AR 1–6. On November 27, 2024, Plaintiff filed a Complaint in this Court seeking judicial review of the ALJ's decision. Dkt. 1. Defendant filed the sealed AR in this matter on January 27, 2025. Dkt. 5.

## II.   BACKGROUND

Plaintiff was born in 1970 and was 50 years old on June 1, 2020, her alleged date of disability onset. *See* AR 18, 28. Plaintiff has at least a high school education. AR 29. According to the ALJ, Plaintiff suffers from, at a minimum, the severe impairments of degenerative disc disease of the spine; obesity; anxiety disorder(s) with panic; Post-Traumatic s Stress Disorder (PTSD); and major depressive disorder. AR 20. The ALJ found Plaintiff had a Residual Functional Capacity (RFC) with the following mental limitations:

> She can learn, remember, and perform simple, routine, and repetitive work tasks, involving short and simple work instructions, which are performed in a routine and predictable work environment with few and only simple work place changes. She can attend, concentrate, and maintain pace for simple, routine, and repetitive work tasks for two hours at a time with normal breaks. She may have frequent contact with supervisors and coworkers during all periods of initial training. Thereafter she may have occasional and superficial contact with supervisors and coworkers. She should have only minimal (defined as 10 percent of the work period or less) and superficial contact with the public.

*See* AR 23–24. Based on the assessed RFC, the ALJ found Plaintiff could perform work existing in significant numbers in the national economy and therefore was not disabled. AR 29.[1]

---

[1] The ALJ assessed different RFCs for two periods (the onset date through July 31, 2022, and August 1, 2022, through the DLI) but included the same mental limitations quoted here for both periods. *See* AR 23–24.

SOCIAL SECURITY DISABILITY APPEAL ORDER - 2

## III. DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of benefits if, and only if, the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

In her opening brief, Plaintiff argues the ALJ erred in (1) assessing her subjective mental symptom testimony, (2) assessing her husband's statement, and (3) failing to resolve an alleged conflict between the Dictionary of Occupational Titles (DOT) and the Vocational Expert (VE)'s testimony. Dkt. 7.

### A. Subjective Symptom Testimony

Plaintiff challenges the ALJ's assessment of her testimony regarding the severity of her mental symptoms. Dkt. 7 at 2. Plaintiff testified she cannot function for prolonged periods in public due to anxiety and stress (*see* AR 45, 250), she has difficulties concentrating sufficiently to complete tasks (*see* AR 44, 46, 254), and cannot engage in driving and other activities due to stress (*see* AR 250). The ALJ was required to provide specific, clear and convincing reasons for rejecting this testimony. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

The ALJ properly discounted Plaintiff's testimony because he found "the intensity, persistence and limiting effects of [her] symptoms" inconsistent with the objective medical evidence and Plaintiff's functioning. AR 25. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)).

The ALJ found Plaintiff's testimony inconsistent with normal mental status examinations, as well as her denials of panic attacks, PTSD symptoms, and depressive episodes. *See* AR 25–26. The ALJ reasonably found such evidence inconsistent with Plaintiff's testimony. Contrary to Plaintiff's testimony of significant difficulties with concentration, nearly all mental status examinations found she had normal concentration. *See* AR 345, 348, 351, 354, 433, 484, 886, 904, 932, 946. The same evidence showed normal judgment and thought process. Plaintiff contends the mental status examinations were not "formal mental status examinations" (Dkt. 7 at 4), but even if this is so, they still reflect providers' judgment about Plaintiff's symptomology at appointments which the ALJ could rely upon. Aside from Plaintiff's statements to providers that she sometimes struggled completing tasks, there is little evidence demonstrating abnormal concentration in the record. The ALJ reasonably weighed the evidence as undercutting Plaintiff's testimony.

Similarly, Plaintiff's denials of depressive symptoms and panic attacks at medication management appointments (*see* AR 338, 341, 344, 482–83, 496, 860, 878, 884, 888, 944, 956, 966, 976–77, 988–89, 994–95) along with treatment notes indicating she was doing well, experiencing improvement, and largely symptom free (*see* AR 338, 341, 344, 500, 502, 860, 868, 920, 922, 934, 950, 952, 954, 956, 960), could reasonably be found to be inconsistent with her testimony that her symptoms of panic attacks and PTSD prevent her from spending substantial time outside of her home.

Arguing to the contrary, Plaintiff points to treatment notes showing she continued to have symptoms, demonstrating her symptoms waxed and waned and were susceptible to stressors. *See* Dkt. 7 at 5–6. And while this assertion may be accurate in part as many treatment notes appear to

reveal Plaintiff had continuing symptoms during the relevant period, the ALJ acknowledged as much, finding much of her continued symptomology was captured by the RFC:

> I rely on evidence noting family interactions as a common stressor to find that she should limit work-related interactions; though because these complaints seem limited to family members and not other individuals, she appears to remain capable of at least some interaction with supervisors, coworkers, and the public. […] I find some limitation on the complexity of tasks, the concentration demands required, and the stability of the workplace to be appropriate to avoid exacerbating anxiety symptoms.

AR 28.

This interpretation of the medical evidence was supported by substantial evidence. Most of the treatment notes reflecting more severe symptoms appeared to be related to difficult interactions with Plaintiff's family (*see* AR 476, 504, 892, 898, 900, 906, 916, 924, 992) and only exacerbated by ancillary interactions with others. *See* AR 470. Moreover, the records reflected her improved ability to handle such stressors (*see* AR 868, 894, 936, 984), supporting the ALJ's finding that she was capable of some social interaction.

Other exacerbators identified in the treatment notes included physical issues (*see* AR 488, 490, 492, 882, 926) but Plaintiff has not challenged the ALJ's findings with respect to her physical limitations, including his findings that her physical issues decreased in severity after receiving surgery during the relevant period. *See* AR 23–24.

Finally, some notes identified her traveling, moving, or having to stay in novel environments as exacerbating her symptoms (*see* AR 486, 488, 506), but the ALJ properly included limitations in workplace changes to address such issues. Thus, the ALJ properly considered the contrary evidence identified by Plaintiff.

The ALJ also properly found Plaintiff's testimony inconsistent with evidence she was able to leave her house more often during the relevant period. *See* AR 26 (citing AR 338, 341,

SOCIAL SECURITY DISABILITY APPEAL ORDER - 5

**B.      The Statement of Plaintiff's Husband**

Plaintiff's husband submitted a statement describing some of her symptoms and limitations. AR 268–74. Under Ninth Circuit precedent, an ALJ's failure to provide germane reasons for rejecting a lay witness statement is harmless where the statement is cumulative of Plaintiff's subjective testimony, the ALJ provided proper reasons for rejecting that subjective testimony, and those reasons apply to the lay witness statement. *Molina*, 674 F.3d at 1116–22. Such is the case here.

Plaintiff's husband's statement describes no limitations beyond those described in Plaintiff's testimony—he described symptoms of anxiety, difficulty interacting with others, and panic attacks. *See* AR 268–72. The ALJ properly discounted that testimony because it was inconsistent with objective medical evidence and some of Plaintiff's activities of daily living, and that same reason applies to Plaintiff's husband's statement. The ALJ's failure to discuss the statement therefore does not require reversal.

**C.      DOT Conflict**

Generally, where the VE "is qualified and presents cogent testimony that does not conflict with other evidence in the record, the [VE's] testimony" will constitute substantial evidence. *Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020). However, "if the expert's opinion . . . conflicts with, or seems to conflict with, the requirements in the [Dictionary of Occupational Titles (DOT)], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Lemear v. Berryhill*, 865 F.3d 1201, 1205–06 (9th Cir. 2017) (quoting *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016)). To trigger the duty of inquiry, the conflict must be "obvious or apparent." *Lemear*, 865 F.3d at 1205–06.

Plaintiff contends the mental limitations in the RFC conflict with the DOT descriptions of the three positions the ALJ relied upon at step five because all three positions require a Level 2 Reasoning. Dkt. 7 at 10–12. Level 2 Reasoning involves "apply[ing] commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "deal[ing] with problems involving a few concrete variables in or from standardized situations." DOT App. C. It is more demanding than Level 1 ("simple one- or two-step instructions" and "standardized situations with occasional or no variables") and less demanding than Level 3 (instructions in "written, oral, or diagrammatic form," "several concrete variables"). *See id.*

The conflict between Level 2 Reasoning and the RFC must be more than a potential one. Because DOT occupational descriptions "list[] 'maximum requirements' of the jobs as 'generally performed,' . . . not all *potential conflicts* between an expert's job suitability recommendation and the [DOT's] listing of 'maximum requirements' for an occupation will be apparent or obvious." *Gutierrez*, 844 F.3d at 807–08 (quoting SSR 00-4p,[3] emphasis added). In *Gutierrez*, for instance, the Ninth Circuit found no conflict between an occasional-overhead-reaching limitation and a DOT description requiring frequent reaching because (1) "not every job that involves reaching requires the ability to reach overhead" and (2) the position in question had no requirements likely or foreseeably involving overhead reaching. 844 F.3d at 807–08.

Following *Gutierrez*, for there to be a conflict, Plaintiff must show either that (1) there is a complete incompatibility between Level 2 Reasoning and the RFC, or (2) it is likely or foreseeable that the specific functions of the positions identified would require mental abilities beyond those included in the RFC. *See id.* Plaintiff has not argued any of the specific tasks

---

[3] SSR 00-4p was rescinded by SSR 24-3p, but that ruling does not apply to decisions (like the one reviewed here) rendered before January 6, 2025.

SOCIAL SECURITY DISABILITY APPEAL ORDER - 8

required by the positions identified at step five are inconsistent with the mental limitations in the RFC. *See* Dkt. 7 at 10–11. Plaintiff's argument therefore fails because there is no complete incompatibility between Level 2 Reasoning and the RFC—that is, not every job involving Level 2 Reasoning would involve mental demands beyond those in the RFC.

There is no conflict between Level 2 and the VE's testimony that the identified positions involved only "short work instructions." Although Level 2 Reasoning describes detailed—and therefore longer—instructions, that is only the "maximum requirement" of Level 2 positions. *See Gutierrez*, 844 F.3d at 807–08. Some Level 2 positions will require far less than "detailed" instructions—they may require instructions only slightly longer than the one- to two-step instructions of Level 1. DOT App. C. Thus, as the Ninth Circuit has noted in dictum, some Level 2 jobs "might involve only three tasks that are simple to explain," and therefore are consistent with short, simple instructions. *Leach v. Kijakazi*, 70 F.4th 1251, 1256–57 (9th Cir. 2023).[4]

Similarly, there is no conflict between Level 2 and the VE's testimony that the identified positions involved only "simple, routine, and repetitive work tasks" and "simple instructions." Level 2 tasks require "few concrete variables" (consistent with doing simple work) and involve "standardized situations" (consistent with routine and repetitive work). *Id.* As the Eighth Circuit recognized in analyzing this same issue, "involved" instructions are likely "complicated,

---

[4] In support of her argument, Plaintiff cites (Dkt. 7 at 10) to *Leach*'s discussion of the Fourth Circuit's decision in *Thomas v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019), which held there was a conflict between Level 2 Reasoning and a short instructions limitation. However, the Ninth Circuit did not go so far in *Leach*. *See* 70 F.4th at 1257 ("The Fourth Circuit's holding in *Thomas* went beyond ours."). The Fourth Circuit's holding in *Thomas* is inconsistent with the Ninth Circuit's approach to such issues. As discussed, under Ninth Circuit precedent, a potential conflict is insufficient. *See Gutierrez*, 844 F.3d at 807–08. As the Fourth Circuit acknowledged, at least some Level 2 positions might involve short instructions. 916 F.3d at 314. But under Ninth Circuit precedent, this would mean there is no conflict between Level 2 reasoning and a short instructions limitation absent any additional showing. *See Gutierrez*, 844 F.3d at 808–09. Indeed, demonstrative of such an inconsistency, the Fourth Circuit found a conflict in *Thomas* because the conflict was "as apparent as the conflict [it] identified in" another Fourth Circuit case, *Pearson v. Colvin*, 810 F.3d 204, 210 (4th Cir. 2015). But in *Pearson*, the Fourth Circuit found there was a conflict between an occasional-overhead-reaching limitation and a frequent-reaching DOT description, *id.*, a result contrary to the Ninth Circuit's conclusion in *Gutierrez*, 844 F.3d at 807–08.

SOCIAL SECURITY DISABILITY APPEAL ORDER - 9

intricate" ones, but the "uninvolved" instructions required by Level 2 Reasoning are likely to not be so. *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (citing *Webster's Third New Int'l Dictionary* 1191, 2499 (2002)). Level 2 Reasoning contains no requirement that an individual follow abstract, diagrammatic instructions, as Level 3 reasoning does. *See* DOT App. C. For that reason, as the Ninth Circuit noted in *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2014), Level 2 Reasoning is consistent with a limitation to simple and routine tasks.

Finally, there is no conflict between Level 2 and the VE's testimony that the identified positions would be "performed in a routine and predictable work environment with few and only simple workplace changes." As the Ninth Circuit recognized in *Stiffler v. O'Malley*, reasoning levels are revealing as to the situational variables in tasks that might be performed at a job, but a limitation concerning the frequency of changes in a workplace environment "concerns broader revisions to the workplace environment" which "are distinct from 'situational variables' in the tasks being performed." 102 F.4th 1102, 1109–10 (9th Cir. 2024).

In sum, at least some positions involving Level 2 Reasoning are likely to involve functions consistent with the mental limitations in the RFC; there is no complete incompatibility between the two. Because Plaintiff has not argued there are inconsistencies between the particular functions of the positions identified at step five and the RFC, there is no demonstrated conflict between Level 2 Reasoning and the VE's testimony that Plaintiff could perform the positions identified at step five.

//

//

//

## IV. CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 25th day of June, 2025.

Grady J. Leupold
United States Magistrate Judge